O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GALT HOTEL, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware Limited Liability Company, and DOES 1 -10, inclusive,<br><br>Defendant. | Case No.: 2:25-cv-07958-MEMF-PD<br><br>**ORDER DENYING MOTION TO REMAND [DKT. NO. 15]** |

Before the Court is a Motion to Remand filed by Plaintiff Galt Hotel, LLC. Dkt. No. 15. For the reasons stated herein, the Court DENIES the Motion to Remand.

//

//

1

I.      **Background**

A. **Factual Background**[1]

Plaintiff Galt Hotel, LLC ("Galt Hotel"), is a California limited liability company. Dkt. No. 1-1 ¶ 2 ("Compl."). Defendant General Motors LLC ("GM") is a limited liability company incorporated and organized under the laws of the State of Delaware and is registered to conduct business in California. *Id.* ¶ 4. Defendant is engaged in the business of designing, manufacturing, and selling motor vehicles and motor vehicle components. *Id.*

On or around May 6, 2021, Galt Hotel purchased a 2021 Cadillac Escalade ("Subject Vehicle") manufactured and/or distributed by GM. *Id.* ¶¶ 6, 9. At the time Galt Hotel purchased the Subject Vehicle, it received express written warranties through which GM undertook the duty to preserve or maintain the utility or performance of the Subject Vehicle, or to provide compensation if there were a failure in utility or performance for a specified time period. *Id.* ¶ 11. In relevant part, the warranty provided that if a nonconformity developed during the applicable warranty period, Galt Hotel could deliver the Subject Vehicle to GM's authorized service and repair facilities, and it would be repaired. *Id.*

The Subject Vehicle developed defects covered by GM's express written warranties, including but not limited to engine defects. *Id.* ¶ 12. These defects substantially impair the use, value, and/or safety of the Subject Vehicle to Galt Hotel. *Id.* Galt Hotel delivered the Subject Vehicle to GM and/or its authorized service and repair facilities for diagnosis and repair of the defects. *Id.* ¶ 13. GM failed to service or repair the Subject Vehicle to conform to the express warranties and subsequently failed to promptly replace the Subject Vehicle or make restitution to Galt Hotel. *Id.* ¶¶ 14-15.

B. **Procedural History**

On May 5, 2025, Galt Hotel filed its complaint against GM in the Superior Court of California for the County of Los Angeles. *See* Compl. Galt Hotel brings four causes of action: (1)

---

[1] Except as otherwise indicated, the following factual background is derived from Plaintiffs' Complaint. Dkt. No. 1-1 ("Compl."). The Court includes these allegations only as background and makes no finding on whether they are true.

violation of California Civil Code § 1793.2(d); (2) violation of California Civil Code § 1793.2(b); (3) violation of California Civil Code § 1793.2(a)(3); and (4) violation of implied warranty of merchantability. *Id.* The first, second, third, and fourth claims are brought under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"). Cal. Civ. Code. § 1790 *et. seq*.

On August 22, 2025, GM filed its notice of removal to this Court on the grounds of diversity jurisdiction. *See* Dkt. No. 1 ("Notice"). Galt Hotel filed its Motion to Remand on September 19, 2025, arguing that GM's removal was untimely and substantively deficient, and thus that remand is necessary. *See* Dkt. No. 15 ("Motion" or "Mot."). GM filed its Opposition on October 3, 2025. Dkt. No. 16 ("Opposition" or "Opp."). On October 9, 2025, GM filed a Supplemental Authority in Support of its Opposition. Dkt. Nos. 17, 17-1, 17-2. That same day, GM also filed a corrected version of its Opposition to correct one citation error. Dkt. Nos. 18, 18-1. Galt Hotel filed its reply on October 10, 2025. Dkt. No. 19 ("Reply"). [2]

II.    **Applicable Law**

The "[f]ederal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal quotation marks omitted). Civil actions may be removed from state court if the federal court has original jurisdiction. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, … original subject-matter jurisdiction [must] lie[ ] in the federal courts."). A plaintiff, as "master of the complaint, 'gets to determine which substantive claims to bring against which defendants …[to] establish—or not—the basis for a federal court's subject-matter jurisdiction.'" *California ex rel. Harrison v. Express Scripts, Inc.*, 154 F.4th 1069, 1077 (9th Cir. 2025) (quoting *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025)).

The defendant has thirty days to remove a case after receipt of the complaint, where the grounds for removal are clear on the face of the complaint, or if not clear, thirty days after receipt of some other document that shows the case is removable. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720

---

[2] Unless otherwise noted, the Court will cite to the Opposition at Dkt. No. 16, and will cite to the corrected Opposition at Dkt. No. 18 only when referenced directly.

F.3d 1121, 1123 (9th Cir. 2013) ("Section 1446(b)(1) and (b)(3) specify that a defendant must remove a case within thirty days of receiving from the plaintiff either an initial pleading or some other document, if that pleading or document shows the case is removable."). If neither thirty-day deadline is triggered, the defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id.*

When there is doubt regarding whether the right to removal exists, a case should be remanded to the state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Further, a removed case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

As a result, removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The defendant seeking removal of an action from a state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010). Courts resolve all ambiguities "in favor of remand to the state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing defendant must establish by a preponderance of the evidence that the amount in controversy "more likely than not" exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Under these circumstances, "both sides submit proof and the court decides, by a *preponderance of the evidence*, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)) (emphasis added). To meet this standard, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-

type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation and internal quotation marks omitted). Indeed, the parties must provide the court with "real evidence" that illustrates the "reality of what is at stake in the litigation" to guide the court in its assessment. *Id.* at 1198.[3]

### III.    Discussion

#### A. GM's Notice of Removal Was Timely Because the Complaint was Indeterminate as to Subject Matter Jurisdiction.

Galt Hotel first argues that GM's removal was untimely under 28 U.S.C. §1446(b) because it was filed more than thirty days after it was served with the Complaint, rendering it procedurally defective. *See* Mot. at 4-7. GM argues that neither the thirty-day deadline under §1446(b) was triggered because the Complaint was indeterminate as to citizenship and the amount in controversy, and only after its own investigation did a non-speculative basis for removal become apparent, making its removal timely. *See generally* Opp.

        i.        <u>Galt Hotel's complaint was indeterminate as to diversity jurisdiction.</u>

To trigger the thirty-day deadline under §1446(b)(1), the defendant must be served with a complaint that clearly reveals the ground for removal. *See Roth*, 720 F.3d at 1123; *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005) ("[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin."). To trigger the second thirty-day deadline pathway under §1446(b)(3), the defendant must be served

---

[3] GM argues that both Galt Hotel's reliance on *Gaus v. Miles* for the strict construction of removal statutes applying to procedural exceptions and Galt Hotel's characterization of the burden to show subject matter jurisdiction as a heavy one are wrong. *See* Opp. at 1, 8. As to the burden of proof argument, the Ninth Circuit explicitly clarified in *Sanchez v. Monumental Life Ins. Co.* that the burden of proof a defendant must show is a preponderance of the evidence. *See Sanchez*, 102 F.3d at 404. And as to the strict construction argument, the Court finds that *Breuer v. Jim's Concrete of Brevard, Inc.,* does make clear that the strict construction of removal statutes is not intended to apply to removal statutes having to do with procedural exceptions. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697-98 (2003) (finding that the strict construction of removal statutes called for in *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941), was superseded to the extent it would apply to exceptions by the language of 28 U.S.C. § 1441).

with an amended pleading, motion, order, or other paper that makes a ground for removal "unequivocally clear and certain." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021).[4]

Here, the Complaint does not reveal any information that triggers removal on the basis of diversity jurisdiction. *See generally* Compl. First, Galt Hotel's complaint failed to make its citizenship clear. *See* Opp. at 10-11. Citizenship, for purposes of diversity jurisdiction, is determined by the state of domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* "A person residing in a given state is not necessarily domiciled there and thus is not necessarily a citizen of that state." *Id*. Furthermore, a limited liability company's citizenship depends on the citizenship of "all the members." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). Here, Galt Hotel did not allege anything beyond being a limited liability company, and a resident of California at the time of the Complaint and all relevant times prior. Compl. ¶¶ 1-2. Galt Hotel did not mention who its members are, and its members' citizenship. *See id.* As the Ninth Circuit held in *Harris*, this is not sufficient to affirmatively reveal citizenship, especially for a limited liability company, where its citizenship depends on all its members' citizenships, and such that it triggers the thirty-day deadline for removal on diversity jurisdiction grounds. *See Harris*, 425 F.3d at 695.

Furthermore, the Complaint does not plead any specific amount at issue. *See generally* Compl. Galt Hotel argues that while it did not allege a specific dollar amount in controversy, the amount in controversy is nevertheless ascertainable on the face of the Complaint. *See* Mot. at 5-8. It notes that it included the civil case cover sheet, which indicated that the claim was being brought under the state court's unlimited jurisdiction, which is for damages over $35,000. Mot. at 7. This fact

---

[4] Neither party relies on nor refers to another document served by Galt Hotel in this case; thus, this second pathway is inapplicable here. *See* Mot at 7-8; Opp. at 10-14. Furthermore, Galt Hotel contends that as part of pre-litigation settlement efforts, it produced to GM a copy of the RISC Agreement and all repair orders in August 2024. *See* Motion at 1; Reply at 1. But Galt Hotel filed its complaint on May 5, 2025, *see* Compl., so the copy of the RISC Agreement was received prior to litigation, and the Ninth Circuit has held that "any document received *prior* to receipt of the initial pleading cannot trigger the second thirty-day removal period," *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886 (9th Cir. 2010) (emphasis added). Thus, the 2024 RISC Agreement did not trigger the thirty-day deadline.

does little, as this checkbox refers to the amount demanded, and does not distinguish actual damages from other penalties demanded, including the two-times purchase price Galt Hotel seeks. *See* Dkt. No. 1-1 Civil Case Cover Sheet; *see also* Mot. at 7. Thus, this does not show that the amount in controversy is met.

Galt Hotel also highlights that its Complaint included (1) the Subject Vehicle's make, model, VIN, and year; and (2) damages sought, including restitution for the purchase of the Subject Vehicle, incidental and consequential damages, civil penalties of two times actual damages, and attorney's fees. *See* Mot. at 5-7. This, it argues, given GM's sophisticated knowledge as manufacturer of such vehicles, was enough for GM to make a plausible allegation as to the amount in controversy, and thus triggered the first thirty-day deadline for removal. *Id*. at 6-8. But this "plausible allegation" standard, as articulated in *Dart*, is the standard for assessing a defendant's removal allegations, not whether a defendant is *obligated* to remove a case within the thirty-day deadline. *See Dart*, 574 U.S. at 89. Because GM could have plausibly alleged that the amount in controversy does not mean the thirty-day deadline was triggered. The Ninth Circuit addressed the question of what triggers the thirty-day deadline in *Harris*, holding that the deadline only triggers the grounds for removal affirmatively revealed, and has affirmed this holding since. *See Harris*, 425 F.3d at 695; *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013) (applying the same principle to hold that the defendant was "not obligated to supply information which [plaintiff] had omitted.").

Also, GM's subjective knowledge or ability to gather information is irrelevant; the focus is on the information made available through the pleadings, and GM had no duty to investigate. *Harris*, 425 F.3d at 694 ("notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."). Just because GM *may* be capable of determining the amount in controversy based on information in the complaint, it does not mean it is then *obligated* to make such a determination and remove it within the thirty-day deadline. *See id*. at 697.

Because the Complaint does not make citizenship or the amount in controversy clear on its face, it was indeterminate as to diversity jurisdiction, and did not trigger the first thirty-day deadline for removal.

Accordingly, for the reasons discussed above, the Court finds that GM has met its burden of showing removal was timely. The Complaint did not make clear on its face that more than $75,000 was at stake, and no other pleading or paper was filed that would fully clarify it. Therefore, neither thirty-day removal deadline was triggered, and GM was allowed to remove upon discovering valid grounds for removal through its own investigations. *See Roth*, 720 F.3d at 1123.

### B. GM Has Shown by a Preponderance of the Evidence that Diversity Jurisdiction Exists.

Galt Hotel next argues that GM has failed to show by a preponderance of the evidence that removal was proper. *See* Mot. at 8-9; *see generally* Reply. GM argues it has shown diversity jurisdiction, rendering removal proper. *See* Notice at 2-6; *see* Opp. at 10-11. Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Galt Hotel does not challenge GM's citizenship allegations: where it is a citizen of California, and that GM is a citizen of Michigan and Delaware. Notice at 3-4. Thus, complete diversity exists.

However, Galt Hotel does contend that GM has failed to sufficiently show that the amount in controversy has been met to establish subject matter jurisdiction. *See* Mot. at 8-9; *see generally* Reply. GM argues that it has established by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See* Opp. at 14-16. Where the amount in controversy is unclear or ambiguous on the face of the complaint, the defendant must show by a preponderance of the evidence that the requisite amount is met. *See Guglielmino*, 506 F.3d at 699. A preponderance of the evidence means it is more likely than not. *Sanchez*, 102 F.3d at 404. In determining the amount in controversy, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). But "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Notably, in neither its Motion nor Reply does Galt Hotel contend that the amount

in controversy is less than $75,000,[5] and provides no evidence of such a claim, but rather solely argues that GM has not met this preponderance of the evidence standard.

### i. Actual Damages

Galt Hotel argues that GM has failed to produce any evidence or specific facts regarding the actual damages. *See* Mot. at 8-9; *see* Reply at 4-6. GM contends that it has satisfied its burden, providing the Retail Installment Sale Contract ("RISC"), repair history, an account payment history, and an accompanying declaration from one of the attorneys on this case as evidence for its actual damages' calculation. *See* Opp. at 14-15; Dkt. Nos. 16-1-16-4. The Court finds that these documents constitute summary-judgment type of evidence and show and substantiate the values used in GM's calculations made under the Song-Beverly damages formula, which satisfies the preponderance of the evidence standard. *See* Opp. at 14-15.

Restitution under the Song-Beverly Act is calculated by the amount directly attributable to use, calculated by multiplying the actual price of the vehicle paid/payable by "a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor." Cal. Civ. Code § 1793.2. The RISC provides that Galt Hotel purchased the Subject Vehicle for $152,438.80 on May 6, 2021, with eight miles on the odometer. *See* Opp. at 14; Ex. A, Dkt. No. 16-2 ("RISC"). The vehicle had a cash price of $115,384.00. RISC. Next, based on its own investigatory efforts, GM identified Galt Hotel's first apparent relevant presentation of defects on July 8, 2022. *See* Fitch Decl., ¶ 3; Dkt. No. 16-3, Ex. B ("Vehicle History Summary"). The Subject Vehicle's odometer at this time displayed 14,634 miles. Vehicle History Summary. Based on the eight miles on the odometer at the outset, GM calculated the mileage driven prior to discovery to be 14,626 miles. *See* Opp. at 14. GM used this number to correctly calculate the mileage offset according to the formula for restitution under the Song-Beverly Act, finding an offset amount of

---

[5] In both its Motion and Reply, Galt Hotel referenced the Magnuson-Moss Warranty Act (MMWA) and the amount in controversy of $50,000. *See* Mot. at 8; Reply at 3, 6. However, Galt Hotel did not assert a cause of action under the MMWA in its Complaint. *See generally* Compl. Therefore, the amount in controversy for jurisdictional purposes is $75,000 here. 28 U.S.C. § 1332(a).

$18,579.75. *Id.* GM identified applicable optional third-party offsets of $1,264.00. *See* Opp. at 15; Cal. Civ. Proc. § 871.27. Finally, as of August 2025, Galt Hotel had made approximately fifty monthly payments of $1,561.65 each and had incurred a late fee of $78.08, leaving a remaining $33,109.25 in unpaid financing. *Id.* GM asserts that, based on discussions with Galt Hotel's counsel, this matter is unlikely to be resolved early, and thus it is reasonable to account for twelve additional monthly payments of $1,561.65, prior to resolution of trial and any appeal, leaving an estimated $17,000 in unpaid financing, bringing the total actual damages calculation to $115,595.05.[6]

The Court finds this to be a reasonable assumption, and not speculative, given the history of litigation between GM and Galt Hotel's counsel. Mot. at 3; Reply at 10-11; *see Arias*, 936 F.3d at 927 ("assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have some reasonable ground underlying them.") (internal quotations omitted). Galt Hotel argues in its Reply that GM must cite specific facts to show offsets from payments made. *See* Reply at 4-5. However, GM did rely on specific facts from the payment history, and thus the Court finds that it was entitled to make a reasonable assumption based on this history and its experience litigating with Plaintiff's counsel. Therefore, based on the detailed calculations provided, with reasoned assumptions as to certain values GM could not specifically procure, the Court finds that this value of $115,595.05 is supported by a preponderance of the evidence.

### ii.   Civil Penalties

Galt Hotel next contends that civil penalties are too speculative to include in the amount in controversy calculation. *See* Reply at 6-9. The Song-Beverly Act permits a plaintiff to obtain a civil penalty of up to two times the amount of actual damages. Cal. Civ. Code § 1794(c). Galt Hotel argues that, despite making a request for two times actual damages in its prayer for relief, this civil penalty award is too speculative, and that GM did not provide any evidence to support it. *Id.* "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective

---

[6] There has been a change of law regarding offsets under the Beverly-Song Act. See Opp. at 12; A.B. 1755, 2023-24 Leg. Reg. Sess. (Cal. 2024). This amendment entitles defendants to additional offsets, including unpaid financing. See Cal. Civ. Proc. Code § 871.27(f). Because this action was filed after January 1, 2025, the Court finds these additional offsets appropriate to consider.

assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Therefore, "the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018).[7]

Here, the Court finds it appropriate to consider civil penalties. Galt Hotel specifically requested civil penalties two times the amount of actual damages in its prayer for relief, did not deny that it is seeking such penalties in its Motion, and alleged GM willfully failed to comply with the Song-Beverly obligations. *See* Compl. at 1-6; *see generally* Mot. GM provided sufficient evidence of the actual damages, rendering the maximum civil penalties amount nonspeculative. *See* Cal. Civ. Code § 1794(c) and (e). Galt Hotel did not provide evidence to the contrary. *See Arias*, 936 F.3d at 925 ("[W]hen a defendant's assertion of the amount in controversy is challenged ... both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."). Given Galt Hotel's request for civil penalties and GM's non-speculative calculation of actual damages, the Court finds it is appropriate to include civil penalties, bringing the estimated damages to $346,785.15. Opp. at 15.

### iii.  Attorney's Fees

Finally, Galt Hotel argues that GM's arguments regarding attorney's fees are not grounded in any evidence and thus cannot be considered in the amount in controversy calculation. *See* Mot. at 9; *see also* Reply at 9-12. "[A] court must include future attorneys' fees recoverable by statute or

---

[7] District courts are split on whether civil penalties under the Song-Beverly Act should be included in the amount-in-controversy calculation. *See e.g.*, *Carillo v. FCA USA, LLC*, 546 F. Supp. 3d 995, 1004 (C.D. Cal. 2021) (finding that two-times the amount of actual damages in civil penalties under the Song-Beverly Act should be included in the amount in controversy calculation for the purpose of removal where a plaintiff alleges willfulness); *Wang v. FCA US LLC*, No. 24-2060, 2025 WL 1218745, at *2 (C.D. Cal. Apr. 28, 2025) (finding that the plaintiffs' arguments that civil penalties were speculative where they did not contest seeking them "border on frivolous"). *But see, e.g.*, *Estrada v. FC US LLC*, No. 20-10453, 2021 WL 223249, at *3 (C.D. Cal. Jan. 21, 2021) (finding the defendant failed to carry its burden as to two times civil penalties because it did not explain why it would be awarded or provide any evidence); *Barrett v. FCA US LLC*, No. 21-243, 2021 WL 1263838, at *3 (C.D. Cal. Apr. 5, 2021) (refusing to include the defendant's "estimate of speculative civil penalties or attorneys' fees to meet the amount in controversy"). The Court finds it appropriate to consider civil penalties where the underlying actual damages has been found non-speculative, and the plaintiff has requested them in their complaint. *See* Opp. at 13; *see also* Reply at 7-9. To the extent Galt Hotel cites district court opinions finding otherwise, the Court notes those as non-binding decisions.

contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Trans. Co., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). However, the Ninth Circuit still requires that "a removing defendant [] prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence." *Id.* at 795. Here, the Court finds that GM has failed to show by a preponderance of the evidence that attorney's fees should be included, but because the amount in controversy has already been met, this finding does not render removal improper. Unlike under actual damages, where GM provided actual evidence to support its careful calculations, here, GM merely alleges what Galt Hotel's counsel has previously charged in similar cases and provides a general estimate of "at least $15,000 in attorney's fees" based on expected work. *See* Opp. at 16. Even if GM's estimates are accurate based on its experience litigating against Galt Hotel's counsel, it is required to show this by a preponderance of the evidence. It has not. Therefore, the Court finds that attorney's fees are not part of the amount in controversy calculation, rendering a final amount of $331,785.15.

Accordingly, because GM has satisfied the amount in controversy by a preponderance of the evidence, the Court finds that GM's removal was proper. [8]

## IV.    Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1.  Plaintiff's Motion to Remand (Dkt. No. 15) is DENIED.

IT IS SO ORDERED.

Dated: March 25, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[8] Because the Court denies the Motion to Remand, it also denies the request for attorney fees. See 28 U.S.C. § 1447(c); *see also Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015).